**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEDREN BROADUS,** | ) | |
| **Petitioner,** | ) | |
| v. | ) | **Criminal No. 05-048** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

**June 28, 2007**

Before the Court is petitioner Kedren Broadus' *Pro Se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Document No. 64). After careful consideration of petitioner's motion, the government's response thereto, and the entire record in the case, including notes of testimony of petitioner's guilty plea colloquy and sentence hearing, the Court will deny petitioner's motion for relief pursuant to 28 U.S.C. § 2255.

**I.      Background**

Petitioner was indicted on March 2, 2005 and charged with one count of possession with intent to distribute fifty (50) grams or more of cocaine base on or about February 10, 2005 in the Western District of Pennsylvania, in the form known as "crack," a Schedule 2 controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii).  Petitioner faced the following statutory and mandatory maximum and minimum sentences: a term of imprisonment of not less than ten years to a maximum of life; a fine not to exceed $4 million; a term of supervised release of at least five years and a special assessment of $100, provided this was petitioner's first felony drug conviction.  21 U.S.C. § 84(b)(1)(A).

On October 25, 2005, petitioner pled guilty without a plea agreement following a

thorough Rule 11 colloquy before this Court, and on February 10, 2006 (not February 23, 2006 as stated in petitioner's motion to vacate), petitioner was sentenced to a term of imprisonment of 120 months, at the low end of the applicable guideline ranges, to be followed by five years of supervised release.

The following are the facts as found by the Court, and recorded in the transcript of the suppression proceedings held on July 22, 2005. Document No. 39. Petitioner was arrested on February 10, 2005 when Police Officers Kavals and Pires initiated a traffic stop of the vehicle in which petitioner was a passenger. The vehicle had failed to stop at a posted stop sign. Upon confirmation of the expired registration of the vehicle, the officers approached the vehicle and Officer Kavals observed the petitioner place two clear plastic sandwich bags holding crack cocaine, into a red McDonald's french fry container. Shortly after Officers Kavals and Pires had stopped the vehicle, Sergeant Jason Snyder and Detectives Edward Fallert and Joseph Lewis arrived on the scene. Petitioner was asked to step out of the vehicle, at which time he was placed under arrest and handcuffed. Detective Lewis searched petitioner and found 1.716 grams of crack cocaine on his person along with two cellular phones and a black digital scale with 0.051 grams of crack cocaine residue. Sergeant Synder opened the McDonald's bag with the french fry container to reveal two bags containing crack cocaine, one with 27.6 grams and the other with 21.38 grams. An additional plastic bag in the McDonald's bag revealed 18.12 grams of powder cocaine. Petitioner was then transported to the Allegheny County Jail, where 25.4 grams of crack cocaine were found inside petitioner's right front jacket pocket.

Petitioner was arraigned on March 14, 2005, at which time the United States Magistrate granted the Government's request for detention due to the dodgy history of Broadus' past

appearances at scheduled court hearings.  (Transcript of Proceedings held on March 14, 2005, Document. No. 29, p. 32).  Petitioner filed a motion for release from custody which this Court denied after conducting an independent *de novo* review of the Magistrate Judge's order, including a full evidentiary hearing and review of the transcript of proceedings.  Petitioner filed a motion to suppress physical evidence retrieved from the vehicle and petitioner's person which this Court denied because the searches and seizures were constitutionally permissible (pursuant to the automobile exception and a search incident to arrest).

On October 25, 2005, petitioner changed his plea from not guilty to guilty (Document No. 48), and he was sentenced on February 10, 2006.  He appealed to the United States Third Circuit Court of Appeals for the order denying his motion to suppress physical evidence, challenging the validity of the traffic stop and the legitimacy of the vehicle search.  The Court of Appeals dismissed the appeal on petitioner's motion to withdraw the appeal.  (Document. No. 65).  There were no further appeals.  On February 2, 2007, petitioner timely filed his section 2255 motion before this Court to vacate, set aside, or correct the 120-month sentence.

Petitioner's section 2255 motion argues that his counsel provided ineffective assistance because he failed to advise him of the 120-month statutory minimum under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); that this Court erred by ruling that it could not sentence him to a term below the guidelines range for cocaine base offenses based on the 100 to 1 crack to powder ratio built into the guidelines; that there was a miscalculation of his criminal history due to the state probation officer's failure to notify him of probation violations and hearings; and that the disparity between sentences for crack and powder cocaine is unconstitutional as it leads to longer sentences for crack offenses.

Petitioner raises the following four claims:

A.      Ground one: Ineffective Assistance of Counsel

        On October 19, 2005, the attorney for the defendant . . . sent a memorandum to the defendant convincing me it would be wise to accept the plea agreement and forgo my upcoming trial.  He stated that "the defendant would probably be sentenced to no less than 5 years but not more than 9 years" . . .  Also counsel recommended not to pursue the appeal of the suppression hearing citing it could affect the 2255 outcome.  He told the judge he wanted to withdraw as counsel if the defendant decided to pursue the appeal. *See* Motion to Vacate, p. 3.

B.      Ground two: The District Court erred in ruling that it could not impose a sentence below guidelines range for offenses involving cocaine base.

        The defendant argued during sentencing that he should get a sentence below the mandatory range.  Judge Schwab specifically stated that he had to adhere to the guidelines and sentenced the defendant to 120 months, in effect the defendant argues that the Court treated the guidelines as mandatory, not advisory [sic] since I was sentenced the Third Circuit ruled, that post-Booker a sentencing court errs when it believes it has no discretion [sic] to consider the crack/powder differential incorporated in the Guidelines as advisory at step three of post-Booker sentencing factors.  See Motion to Vacate, p. 5.

C.      Ground three: Defendant objects to the criminal history category of II.

        The defendant was arrested twice for summary vehicle violations, before the term of probation ended, however I reported to my probation officer upon being released in June 2004 and he never notified me of a violation and signed me off of probation eventually.  Also defendant was never notified of any violation or present for hearings.  Therefore two point addition should not be assesed [sic] because gov'ment [sic] didn't prove defendant was on probation and does not accurately reflect seriousness of defendant's criminal history. See Motion to Vacate, p. 7.

D.      Defendant argues the 120 month statutory sentence creates unjustifiable disparity creating longer sentences for crack offenses.

        81.4% of people convicted for crack offenses are black whereas 30% sentenced for powder are black.  The 100:1 ration requires a mandatory sentence of 120 months whereas the same offense involving powder cocaine could warrant less than 60 months.  The codification of this disparity in the guidelines produces a cruel irony in light of the fact that one of the founding mandates of the guidlines [sic] noted in the sentencing reform act was to avoid unwarranted sentencing among defendants with similar records who have been found guilty of similar conduct.  See Motion to Vacate, p. 8.

-4-

II.     **Discussion**

Section 2255, 28 U.S.C. § 2255 states the following:

> Unless the motion and the files and records of the case conclusively show
> that the prisoner is entitled to no relief, the court shall cause notice thereof
> to be served upon the United States attorney, grant a prompt hearing
> thereon, determine the issues and make findings of fact and conclusions of
> law with respect thereto. If the court finds that the judgment was rendered
> without jurisdiction, or that the sentence imposed was not authorized by
> law or otherwise open to collateral attack, or that there has been such a
> denial or infringement of the constitutional rights of the prisoner as to
> render the judgment vulnerable to collateral attack, the court shall vacate
> and set the judgment aside and shall discharge the prisoner or resentence
> him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the district court. *United
States v. Day*, 969 F.2d 39, 41 (3d Cir. 1992), *quoting Government of the Virgin Islands v. Forte*,
865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954 (1991).  In exercising that discretion,
"the court must accept the truth of the movant's factual allegations unless they are clearly
frivolous on the basis of the existing record.  Further, the court must order an evidentiary hearing
to determine the facts unless the motion and files and records of the case show conclusively that
the movant is not entitled to relief." *Day,* 969 F.2d at 41-42 (citation omitted).  *See also* Rules
Governing Section 2255 Proceedings, Rules 4 and 8.  The court should view the factual
allegations in the light most favorable to the petitioner. *Government of the Virgin Islands v.
Weatherwax,* 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct
evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel)
(subsequent history omitted).

For petitioner to establish counsel was ineffective, he must show counsel's performance

(1) was in fact deficient and (2) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different.  *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689-90 (citation omitted).  On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States,* 951 F.Supp. 555, 558 (W.D.Pa. 1996), *quoting Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431-32 (3d Cir.), *cert. denied* 117 S.Ct. 538 (1996).  "Reasonable trial strategy must, by definition, be reasonable." *Davidson,* 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (*Strickland* standards for claims of ineffective assistance of counsel unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

In the context of a section 2255 petition for collateral relief, the Court of Appeals for the

Third Circuit has offered the following guidance:

> The . . . test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all of appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held. Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice--first, as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson,* 857 F.2d 923, 927-28 (3d Cir. 1988).

In the context of a guilty plea, these principles are equally applicable. As the Court of Appeals for the Third Circuit summarized:

> "In most cases, a defendant's claim of ineffective assistance of counsel involves counsel's performance during the course of a legal proceeding, either at trial or on appeal." *Flores-Ortega*, [528 U.S. 470, 481 (2000)]. However, the principles apply equally to those defendants who have pled guilty. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied the *Strickland* two-part test for determining ineffective assistance of counsel in a case where the defendant challenged a guilty plea. Although the standard for deficient performance remains unchanged, in a guilty plea case the standard for prejudice "focuses on *whether counsel's constitutionally ineffective performance affected the outcome of the plea process*." *Id.* at 59; *see United States v. Nahodil*, 36 F.3d 323, 326-327 (3d Cir.1994) . . . In order for a defendant . . . who challenges his guilty plea to satisfy the prejudice requirement, he must demonstrate that there is a "reasonable probability that, *but for counsel's errors, he would not have pleaded  guilty and would have insisted on going to trial*."

-7-

> *Hill*, 474 U.S. at 59.  "As with all applications of the *Strickland* test, the
> question whether a given defendant has made the requisite showing will turn on
> the facts of a particular case." *Flores-Ortega*, 528 U.S. at 495.

*Weeks v. Snyder,* 219 F.3d 245, 257 (3d Cir. 2000) (emphasis added; certain parallel and other

citations omitted).

         a.      <u>Ineffective Assistance of Counsel</u>

Petitioner asserts that on October 19, 2005, his attorney sent him a memorandum

attached to his motion to vacate (Document No. 64, pp. 13-14) incorrectly advising him that he

would serve less than the 120-month statutory minimum under §§ 841(a)(1) and

84(b)(1)(A)(iii), specifically between 70-108 months.  The Court construes petitioner's

argument to be that counsel's advice as to the sentence he faced was erroneous and that he

would not have pled guilty had he known of the 120-month statutory minimum, because

otherwise, petitioner cannot show prejudice.  *Weeks*, 219 F.3d 257, *citing Hill*, 474 U.S. at 59.

This conclusion is unsubstantiated.

The erroneous advice that counsel gave petitioner in the memorandum does not

demonstrate ineffective assistance of counsel under *Strickland*. It has long been established that

an ". . . erroneous sentencing prediction by counsel does not constitute ineffective assistance of

counsel where an adequate plea hearing was conducted . . ."  See *United States v. Jones*, 336

F.3d 245, 254 (3d Cir. 2003) and *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972).

This Court engaged petitioner in an extensive colloquy at the guilty plea hearing which

occurred six days after petitioner's receipt of the memorandum and rebuts Broadus' argument.

Whatever misconceptions petitioner might have had in regards to his possible sentence range

were dispelled by the in-court guilty-plea colloquy (Document No. 70) which was very clear in

explaining the potential sentence that defendant could receive.  The following excerpts from the

in-court guilty-plea colloquy transcript demonstrate that petitioner was fully informed of the

mandatory statutory minimum of 120 months, that he understood the statutory minimum, and

accepted the consequences thereof.

> THE COURT:  The maximum sentence I am authorized to impose under the law
> on the offense to which you are pleading guilty as set forth by the Government in
> its indictment memorandum, if this is your first felony drug conviction, is as
> follows: First, a term of imprisonment of *not less than ten years* to a maximum of
> life; a fine not to exceed $4 million; a term of supervised release of at least five
> years; and a special assessment of $100 . . .  *Do you understand the potential
> sentence that the Court is authorized to impose*?
> THE DEFENDANT: Yes.

(Emphasis added).  (Document No. 70, pp. 7-8).

> THE COURT:  On behalf of the Government, what would be the sentence range
> should the position you set forth be correct, which is I think 30 points plus
> criminal history of one?
> MR. BRADY:  Yes, Your Honor. It would be -- the guideline range is 97 to 121
> months, but it would also be subject to the statutory floor of 120 months.
> THE COURT: So that's a statutory minimum?
> MR. BRADY:  Yes, Your Honor, *for possession with intent to distribute 50
> grams or more of crack cocaine, the statutory floor is ten years to a mandatory of
> life*.

(Emphasis added).  (Document No. 70, p. 11).

> THE COURT: Has anyone predicted or promised you what your actual sentence
> will be?
> THE DEFENDANT: No.
> THE COURT: Has anything I have said here today suggested to you what your
> actual sentence will be?
> THE DEFENDANT: No.

(Document No. 70, pp. 13-14).

b.      Sentencing Guidelines

Broadus' claim that the Court treated the Sentencing Guidelines as mandatory is

unfounded.  The Government argues that petitioner has misunderstood the nexus between the

*advisory* sentencing guideline and the *mandatory* statutory minimum sentences.  (Government's

Response to the Defendant's Section 2255 Motion, Document No. 69, p. 22).  The Court agrees

with the Government that the Court had no discretion to sentence petitioner below the statutory

mandatory minimum sentence.

Petitioner did not qualify for the safety valve under U.S.S.G. § 5C1.2[1] nor did the

---

[1]Section 5C1.2 states:
  (a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. §
  841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance
  with the applicable guidelines without regard to any statutory minimum sentence, if
  the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set
  forth below:

  (1) the defendant does not have more than 1 criminal history point, as determined
  under the sentencing guidelines before application of subsection (b) of 4A1.3
  (Departures Based on Inadequacy of Criminal History Category);

  (2) the defendant did not use violence or credible threats of violence or possess a
  firearm or other dangerous weapon (or induce another participant to do so) in
  connection with the offense;

  (3) the offense did not result in death or serious bodily injury to any person;

  (4) the defendant was not an organizer, leader, manager, or supervisor of others in the
  offense, as determined under the sentencing guidelines and was not engaged in a
  continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

  (5) not later than the time of the sentencing hearing, the defendant has truthfully
  provided to the Government all information and evidence the defendant has
  concerning the offense or offenses that were part of the same course of conduct or of a
  common scheme or plan, but the fact that the defendant has no relevant or useful
  other information to provide or that the Government is already aware of the
  information shall not preclude a determination by the court that the defendant has

Government file a motion for downward departure[2].  Moreover the record shows the Court

treated the guidelines as advisory, not mandatory, and informed Broadus accordingly.

> THE COURT: Do you understand that I am required to consider the guidelines
> adopted by the United States Sentencing Commission before reaching appropriate
> sentence, but that *those guidelines are advisory and not binding on this Court*?
> THE DEFENDANT: Yes.

(Emphasis added).  (Document No. 70, pp. 8-9).

> c.        Calculation of Criminal History

Broadus' third claim objects to the two points added to his criminal history computation

as a result of his being on probation at the time he committed the offense of possession with

intent to distribute fifty grams or more of crack cocaine.  Petitioner asserts there was a

miscalculation of his criminal history due to his probation officer failing to inform him of any

probation violations or hearings and that the government failed to prove that he was on

probation.  He argues that the computation unfairly precluded him from the safety valve

application under U.S.S.G. § 5C1.2.

The Court addressed this claim in its Tentative Findings and Rulings (Document No.

56).  Petitioner argued in his Position with Respect to Sentencing Factors that his probationary

period ended on November 8, 2004 and he was arrested for this instant case on February 10,

2005, and thus the two points added to his criminal history should be removed.  This Court

---

> complied with this requirement.
>
> (b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and
> (2) for whom the statutorily required minimum sentence is at least five years, the
> offense level applicable from Chapters Two (Offense Conduct) and Three
> (Adjustments) shall be not less than level 17.

[2]Section 5C1.2 requires a motion by the government before the Court can consider
whether to apply the safety valve.  *United States v. Kellum*, 356 F.3d 285 (3d Cir. 2004).

disagreed with that reasoning:

3. However, as the defendant concedes, prior to the probation completion date of November 8, 2004, he was arrested on February 1, 2004, and again on July 23, 2004, and pled guilty to summary disorderly conduct and summary motor vehicle violations, respectively. On September 7, 2005, the state court found that defendant had violated the terms of his probation.

4. As the government points out, and the probation and pretrial services office agrees, defendant was in violation of his probation, and therefore, under 42 Pa.C.S.A. § 9771(b), upon a finding of a probation violation, a court may impose any sentence upon a defendant that was available to the court at the initial sentencing. At sentencing on a revocation of probation, "the trial court is limited only by the maximum sentence it could have imposed at the time of original probationary sentence." *Commonwealth v. Coolbaugh*, 770 A.2d 788, 792 (Pa. Super. 2001).

5. This Court does not agree with defendant that his probationary term ended on November 8, 2004; rather, due to his subsequent criminal acts (which are undisputed), he remained on probation until the September 7, 2005 probation violation hearing, at which the Court found that he violated his probationary term, but still closed the case.

6. Because defendant remained on probation at the time of this offense, the Presentence Investigation Report properly included 2 criminal history points for defendant having been on probation at the time of the instant offense, and the Court sees no reason to exercise its equitable power to find otherwise.

7. Accordingly, because defendant criminal history category will remain at a II, he does not qualify for the safety valve exception (which requires a criminal history category of I).

(Tentative Findings and Rulings, Document No. 56, pp. 2-3).

As evidenced above, this Court has already determined that the inclusion of the two points in petitioner's criminal history calculation, his remaining at the category of II, and his disqualification from the safety valve application was proper and petitioner offers nothing to cause this Court to reconsider this ruling.

       d.    <u>Disparity between sentences for crack and powder cocaine</u>

Petitioner argues that the "120 month statutory sentence creates an unjustifiable disparity creating longer sentences for crack offenses" than for powder cocaine.  (Motion to Vacate, p. 8).  Petitioner has waived this issue as he failed to raise it on direct appeal.  His claim is defaulted and is not entitled to review unless he can show why the default should be excused.  In other words, petitioner must establish cause for the default and that prejudice resulted from the default.  See *United States v. Wilson*, 2006 WL 1428312, at *2 (W.D.Pa. 2006); *Riley v. Lavan*, 2004 WL 2203733, at *2 (E.D.Pa. 2004)*; United States v. Mannino*, 212 F.3d 835, 839 (3d Cir. 2000) *citing United States v. Essig*, 10 F.3d 968, 977 (3d Cir.1993).

Broadus did previously raise this issue in his Position with Respect to Sentencing Factors in regards to his request for downward departure and this Court rejected this argument in its Tentative Findings and Rulings:

> 9.  . . . the United States Court of Appeals for the Third Circuit, and other circuits, have rejected post-*Booker* challenges based on the disparity between sentences for crack cocaine offenses and the sentences for powder cocaine.  In *United States v. Villalona*, 139 Fed. Appx. 407 (3d Cir. 2005), which was not precedential but this Court finds instructive, the Court of Appeals for the Third Circuit rejected the argument that the sentencing disparities between crack cocaine and powder cocaine violated a defendant's due process right under the Fifth Amendment and necessitated a downward departure.  *See also, United States v. Cawthorn*, 429 F.3d 793, 802-03 (8th Cir. 2005); *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005).

(Document No. 56, p. 3).

Although petitioner is now challenging the constitutionality of the differential between crack and powder cocaine sentences, his argument still fails.  *Booker* did give district courts the ability to *consider sentencing disparities* as reasons to impose sentencing outside the advisory guidelines range, but it did not mandate that district courts were required to impose a shorter

sentence. *United States v. Booker*, 543 U.S. 220, 261, 264 (2005). *See also United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006). Furthermore, petitioner's reliance on *Booker* is foreclosed by the recent decision of the United States Court of Appeals for the Third Circuit in *In re Olopade*, 403 F.3d 159 (3d Cir. 2005), holding that the rule of *Booker*, which extended the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the Federal Sentencing Guidelines, is not retroactively applicable to cases on collateral view.

For all of the foregoing reasons, this Court will deny petitioner's motion for relief under 28 U.S.C. § 2255. An appropriate order will be entered.

 /s/ Arthur J.  Schwab
**Arthur J. Schwab**
**United States District Judge**

cc:    Petitioner and all ECF counsel of record